## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| ANNA SEBALLOS, on behalf of herself and all others similarly situated,<br><br>PLAINTIFF,<br><br>- AGAINST -<br><br>WILLIAM MARSH RICE UNIVERSITY,<br><br>DEFENDANT. | Case No. 4:21-cv-000777<br><br><br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Anna Seballos ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant William Marsh Rice University ("Rice," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend William Marsh Rice University for in person hands-on educational services and experiences for the semesters or terms affected by Coronavirus Disease 2019 ("COVID-19"), including the Spring 2020 semester, and had their course work moved to online only learning and failed to receive the services for which they paid fees.

2.      Students, like Plaintiff, were required to pay tuition for the Spring 2020 semester to attend Rice, including a typical tuition price of approximately $24,165.00 for undergraduate

1

students, and mandatory fees for each semester of approximately $338.00, including a Student Activity Fee and a Health & Wellness Support Fee ("Mandatory Fees"). Additionally, students typically were required to pay $1,000.00 in health insurance fees, and over $4,800.00 in room and board if they resided on Rice housing. Rice also charged a $53.00 Student Rec Center Fee, which it later provided a refund of approximately 38% ($20.00).

3.      Rice has not refunded any amount of the tuition or any of the Mandatory Fees, even though it canceled in-person classes on or about March 9, 2020, and began the transition to online only learning.

4.      Because of the University's response to the COVID-19 pandemic, on or about March 9, 2020, the University also stopped providing services or facilities the Mandatory Fees were intended to cover.

5.      According to a public release on March 8, 2020, Defendant announces "Out of an abundance of caution and to allow faculty and staff time to prepare for possible remote instruction this semester, in-person classroom instruction and undergrad teaching labs for the week of March 9 are canceled. During the week of March 9-13, faculty can provide material that can be completed remotely and does not require group interaction."[1] In a follow up press release the University announced that all classes will be moved online for the reminder of the semester and "by the end of day on Wednesday, March 25, all undergraduate students who live on campus and are able to do so must leave campus and return home for the remainder of the semester." [2]

6.      The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 9, 2020 constitutes a breach

---

[1] https://coronavirus.rice.edu/news/rice-alert-classes-canceled-week-march-9
[2] https://coronavirus.rice.edu/news/message-undergraduate-students-classes-moving-online-criteria-remaining-campus-it-needs

2

of the contracts between the University and Plaintiff and the members of the Class and is unjust.

7.      In short, Plaintiff and the members of the Class have all paid for tuition for a first-rate education and on-campus, in person educational experiences, with all the appurtenant benefits offered by a first-rate university. Instead, students like Plaintiff were provided a materially different and insufficient alternative, which constitutes a breach of the contracts entered into by Plaintiff with the University.

8.      As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities that were simply not provided. This failure also constitutes a breach of the contracts entered into by Plaintiff with Rice.

9.      The Mandatory Fees charged by Defendant include a Student Activity Fee, a Health & Wellness Support Fee, and various course fees.

10.      Plaintiff and the Class have been deprived of access to these facilities and services as a result of Defendant's response to the Coronavirus. This failure also constitutes a breach of the contracts entered into by Plaintiff with Defendant.

11.      Rather than offer partial refunds, credits, or discounts to students like Plaintiff and the Class and balance the financial difficulties associated with Covid-19, Defendant has instead elected to place the financial burden entirely upon its students by charging them full tuition and fees when the services Rice provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class agreed to.

12.      Plaintiff does not challenge Defendant's compliance with the Covid-19 orders that were in place in Texas. Rather, Plaintiff challenges Defendant's decision to retain monies paid by students like Plaintiff and refuse to offer any refunds, provide any discounts, or apply any credit to Plaintiff and Class members' accounts when Defendant failed to provide the in-person and on-

3

campus services.

13.    Plaintiff seeks, for herself and the Class members, the University's disgorgement and return of the pro-rated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the University closed and switched to online only learning.  The return of such amounts would compensate Plaintiff and the Class members for damages sustained by way of Defendant's breach.

14.    Plaintiff seeks for herself and the Class members protections including injunctive and declaratory relief protecting Class Members from paying the full cost of tuition and Mandatory Fees during the pendency of the pandemic in light of the educational services, opportunities, and experiences Defendant can actually safely provide.

15.    Plaintiff and members of the Class are entitled to a pro-rated refund of tuition and Mandatory Fees for the duration of Defendant's Covid-19 related closures for the in-person education and on-campus services and opportunities that Plaintiff and members of the Class have been denied.

## **PARTIES**

16.    Plaintiff Anna Seballos was an undergraduate student during the Spring 2020 semester. In the Spring 2020 semester, Rice charged Plaintiff approximately $24,165.00 in tuition, $279.00 for a Health & Wellness Support Fee, and $59.00 for a Student Activities Fee. Additionally, Plaintiff Seballos was charged $4,850.00 for room and board and $2,220.00 for a meal Plan. Rice later provided a pro-rated refund for room, board, and the meal plan of approximately 38%. Plaintiff Seballos was also charged a $53.00 Student Rec Center Fee, which was later refunded at a 38% rate.

17.    Plaintiff Seballos is a resident of Shaker Heights, Ohio.

18.     Plaintiff Seballos paid tuition and Mandatory Fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Seballos has not been provided a pro-rated refund of the tuition for her in-person classes that were discontinued and moved online, or the Mandatory Fees she paid after the University's facilities were closed and events were cancelled.

19.     Defendant William Marsh Rice University is a private research university located in Houston, Texas.

20.     Rice was founded in 1912. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs.

21.     Defendant's undergraduate and graduate programs include students from many, if not all, of the states in the country. Defendant is a citizen of Texas.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

23.     This Court has personal jurisdiction over Defendant because it resides in this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which the District is located.

25.     Plaintiff attended Rice in this District and in the State of Texas.

## FACTUAL ALLEGATIONS.

26.     Plaintiff and Class Members paid tuition and Mandatory Fees to attend Rice's

Spring 2020 semester. The Spring 2020 semester started on January 13, 2020 and ended on or around May 6, 2020.

27.     Tuition at Rice was approximately $24,165.00 for undergraduate students, and Mandatory Fees for each semester were approximately $338.00, including a Student Activity Fee, and a Health & Wellness Support Fee. Additionally, students could be required to pay up to $1,000.00 in health insurance fees, over $4,800.00 in room and board if they resided in Rice housing, and a $53.00 Student Rec Center Fee. The Room and Board, Meal, and Student Rec Center Fees were later refunded by approximately 38%.

28.     Plaintiff and the members of the Class paid tuition for the benefit of on-campus live interactive instruction and an on-campus educational experience throughout the semesters.

29.     Plaintiff and Rice entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person educational services, experiences, opportunities, and other related services.

30.     The terms of the contractual agreement were set forth in the documents and materials provided to Plaintiff from Rice, including, but not limited to, Rice's website, marketing materials, the application for admission submitted by Plaintiff and Class Members, the acceptance letters received by Plaintiff and Class Members, the registration materials, the course catalog, course listings, the registration materials, the bills/invoices, the student handbook, and other materials that were provided to the Plaintiff and the Class.

31.     Prior to Plaintiff's enrollment, Rice highlighted in marketing materials, advertisements, and other documents that in-person educational opportunities, experiences, and services were invaluable to Plaintiff's educational experiences.

32.     Defendant offered these services to Plaintiff in exchange for payment of tuition and

fees.

33.     Defendant offered these services to Plaintiff in exchange for payment of tuition and fees during various semesters during her enrollment, including the Spring 2020 semester.

34.     Plaintiff made payments to Defendant based on promises made by Rice in those documents in lieu of receiving education at other universities or academic institutions – or enrolling in online only universities.

35.     Defendant priced the cost of tuition based on the assumption of a full term of in-person learning.

36.     Upon information and belief, Defendant priced the Mandatory Fees based on the amount of services that students like Plaintiffs would receive via in-person access.

37.     Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiff.

38.     The University has not held any in-person classes since March 9, 2020 for undergraduate students.  All classes since March 9, 2020 have only been offered in a remote online format with no in-person instruction or interaction.

39.     The services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to Rice's health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

40.     As a result of Defendant's response to the Coronavirus, Plaintiff and the Class were denied access to such facilities, services, and technology despite paying the Mandatory Fees.

41.     Rice has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

42.     Students attending Rice's Spring 2020 semester did not choose to attend an online

only institution of higher learning, but instead chose to enroll in Rice's in-person educational programs – with the understanding that Rice would provide in-person educational opportunities, services, and experiences.

43.     On its website and in its documents, Rice markets the University's on-campus experience and opportunities as a benefit to students. Rice's touts its "Unconventional Culture" stating "[s]pirited communities where students live, dine and interact with peers, faculty, staff and alumni, the resident college system allows students to develop strong relationships and contribute to the betterment of each other's lives and intellectual achievement. Within our colleges, legacies are born, traditions are celebrated, and student spirit thrives."[3]

44.     Defendant marketed and conveyed the in-person experiences, including through sample materials like this:



---

[3] https://www.rice.edu/about#block-abouttakeavirtualtour







45.     Rice was unable to offer the "Unconventional Culture" or similar experiences as detailed in the marketing materials and documents provided to Plaintiff and similarly situated individuals because of COVID-19.

46.     Rice uses its website, promotional materials, circulars, admission papers, and publications to tout the benefit of being on campus and the education students will receive in its facilities.

10

47.     On its application portal Rice:

a.      Touts the history and facilitates of its campus "Rice is a hub for innovation and research – where the Nobel Prize-winning Buckyball was discovered, home to one of the happiest and most diverse student bodies in the country, the workplace of award-winning faculty, where President Kennedy delivered his famous "Moon Speech" and next-door collaborators with the world's largest medical center – and the premier university in the nation's most diverse city. But most importantly, we are a community of scholars who truly care about one another's success. We're more collaborative than competitive. Because together, we achieve more. At Rice, your opportunities are unlimited."

b.      Promotes its educational opportunities and faculty "Rice offers 50+ undergraduate majors and 20+ interdisciplinary minors across seven schools of study. Our student-to-faculty ratio is six to one, and the median class size is 14 students. From your first semester on campus, no matter your major, you'll have the opportunity to conduct research alongside experts. You'll be able to apply your skills, gain valuable professional experience and interact with industry leaders as you address real-world issues.

c.      Markets its student life experience, "For over half a century, the residential college system has set Rice apart and continues to shape and enhance student life."[4]

48.     Defendant highlights the values of the on-campus experience on its website. "Development is the cultivation of leadership experience, advocacy and inclusion efforts, social and cultural engagement, and personal growth through experiential learning."[5] Further "[c]ommunity is a shared sense of belonging with an emphasis on diversity and inclusion, founded on teamwork, engagement and support, which encourages collaboration and relationship building to positively influence the Student Center and our many stakeholders."[6]

49.     However, that is not what students, including Plaintiff and the Class, received during the semesters affected by Covid-19.

50.     After Rice converted to online only learning, the educational experience and services offered to Rice Students was materially different in practically every aspect as compared

---

[4] https://www.mycoalition.org/public/info/rice
[5] https://studentcenter.rice.edu/mission-vision-values
[6] Id.

11

to what was promised and what the educational experience afforded to Plaintiff and the Class once was.

51.     As a result of COVID-19, the online-only learning options offered to Rice's students were materially different than the educational experience Plaintiff and the members of the Class contracted for and paid for.  During the online portion of the Spring 2020 semesters, Rice used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. There was a lack of classroom interaction among teachers and students, and among students that was expected as per typical in person learning settings.

52.     Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

53.     Students, like Plaintiff, were denied access to facilities, which have been denied to Plaintiff and students, such as libraries, laboratories, computer labs, recitations, and study rooms, are integral to Rice's educational services for which Plaintiff paid a premium.

54.     Students, like Plaintiff, were denied access to activities offered by campus life fosters intellectual and academic development and independence, and networking for future careers.

55.     Rice priced the tuition and Mandatory Fees based on the in person educational services, opportunities and experiences it promise to provide on campus.

56.     Rice has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for during the semesters affected by Covid-19, and have offered no discount, rebates, or refunds going forward.

57.     Rice has not refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating

the services and facilities for which the Mandatory Fees were intended to pay.

58.     Plaintiff and the Class members are therefore entitled to a pro-rated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed, as well as for other semesters impacted by Covid-19.

59.     Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

60.     Plaintiff brings this case individually and, pursuant to FRCP 23, on behalf of the class defined as:

> All persons who paid, or will pay, tuition and/or the Mandatory Fees for a student to attend in-person class(es), at William Marsh Rice University, during the Spring 2020 or any other semester affected by Covid-19 at William Marsh Rice University but had their educational experiences and class(es) moved to online only learning (the "Class").

61.     Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary, before this Court determines whether certification is appropriate.

62.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of FRCP 23 and other statutes and case law.

63.     The Class is so numerous that joinder of all members is impracticable.  Although the precise number of Class members is unknown to Plaintiff, the University has reported that an aggregate of 7,100 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to the University and can be

identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

64.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members.  These questions predominate over questions that may affect only individual members of the Class because Rice has acted on grounds generally applicable to the classes.  Such common legal or factual questions include, but are not limited to:

a.   Whether Rice accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by Covid-19;

b.    Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 9, 2020;

c.   Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after mid-March 2020;

d.   Whether Defendant is unjustly enriched by retaining all of the tuition and Mandatory Fees during the time when Rice has been closed, and Plaintiff and the members of the Class have been denied an in-person and on-campus live education and access and the services and facilities for which the Mandatory Fees were paid;

e.   Whether Defendant intentionally interfered with the rights of the Plaintiff and the Class when it cancelled all in-person classes and only provided a remote online format, cancelled all on-campus events, strongly encouraged students to stay away from campus, and discontinued services for which the Mandatory Fees were intended to pay, all while retaining the tuition and Mandatory Fees paid by Plaintiff and the Class; and

f.   The amount of damages and other relief to be awarded to Plaintiff and the Class members.

65.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fees that they paid, that the University stopped providing in mid-March.

66.     Plaintiff is a more than adequate class representative.  In particular:

a)      Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

b)      because her interests do not conflict with the interests of the other Class members whom she seeks to represent;

c)      no difficulty is anticipated in the management of this litigation as a class action; and

d)      Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

67.     Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

68.     It is impracticable to bring the individual claims of every Class member before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.  A class action is superior to other available methods

15

for the fair and efficient adjudication of this litigation.  The damages or financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against the University.  It would, thus, be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

69.    Plaintiff also seeks class certification for injunctive and declaratory relief under FRCP 23(b)(2) and (b)(3), at the appropriate juncture.

## FIRST CLAIM FOR RELIEF
### BREACH OF CONTRACT
### (On Behalf of Plaintiff and the Class)

70.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged herein.

71.    Plaintiff brings this claim individually and on behalf of the members of the Class.

72.    Plaintiff and Class members entered into identical, binding contracts with Defendant by accepting Defendant's offer to register for on-campus classes in accordance with the terms of the Catalogs, Defendant's publications, and Defendant's usual and customary practice of providing on-campus courses.

73.    The language on Rice's website, Catalogs, and in other materials made available to students promising in-person instruction, campus facilities, services, and resources became terms

of the contract. That is, at the time of contract, the parties had the reasonable expectation that, in exchange for tuition and fee payments, Defendant would provide Plaintiff and Class members with an on-campus education. The nature of the instruction provided by Rice at the time Plaintiff and Class members enrolled (i.e., in-person classroom instruction) as well as the facilities and resources offered by Rice were and are material terms of the bargain and contractual relationship between students and Defendant.

74.     Under their contracts with Defendant, and per Defendant's usual and customary practice of providing on-campus courses, Plaintiff and Class members registered for on-campus courses and paid Defendant's tuition and/or fees for Defendant to provide in-person instruction and access to Defendant's facilities.

75.     Plaintiff and Class members accepted and intended to use and enjoy Defendant's on-campus classes and facilities.

76.     Plaintiff and Class members have fulfilled all requirements of their mutually agreed contracts, having followed the Catalogs' policies, procedures, and requirements for registering and paying for on-campus courses and access to on-campus facilities and services. Plaintiff and Class members have paid Defendant for all financial assessments starting in the Spring 2020 semester.

77.     By ceasing in-person instruction, relegating Plaintiffs and Class members exclusively to remote instruction, and shutting down campus facilities and opportunities to Plaintiffs and the Class, Defendant failed to provide the services for which Plaintiffs and Class members bargained when they entered into their contractual relationship with Defendant.

78.     Defendant's failure to provide in-person instruction and shutdown of campus facilities amounts to a material breach of the contract.

79.     The tuition, fees, and other costs that Plaintiff and the proposed Class paid were intended to cover in-person educational and extracurricular services. Defendant, however, have failed and continues to fail to provide the education and services due under the contracts, yet have improperly retained the funds Plaintiff and the other Class members paid or agreed to pay.

80.     Plaintiff and members of the Class have suffered damages as a direct and proximate result of Defendant's breach, including being deprived of the education, experience, and services that they were promised and reasonably expected to obtain, and for which they have paid.

81.     Plaintiffs and Class members are entitled to an award of money damages or partial restitution in an amount to be determined at trial as redress for Rice's breach, including but not limited to prorated reimbursement of the tuition, fees, and other expenses for services that Defendant failed and continues to fail to deliver fully.

82.     Defendant's performance under the contracts is not excused because of COVID-19. Even if performance were excused or impossible, Defendant would nevertheless be required to return the funds received for services and/or goods that it did not provide.

### SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

83.     Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

84.     In the alternative, Plaintiff brings this claim for unjust enrichment individually and on behalf of the members of the Class.

85.     By paying Rice tuition and the Mandatory Fees for the Spring 2020 semester, the University agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees that were paid pertained to

throughout the semester.

86.     Defendant has retained the benefits of the amount of tuition and fees that Plaintiff and Class members have provided – without providing the benefits that Plaintiff and Class members were owed.

87.     For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after in or around March 9, 2020. Yet Defendant assessed Plaintiff with tuition and Mandatory Fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

88.     Plaintiff was not able to access such facilities or services remotely.

89.     Plaintiff paid tuition and Mandatory Fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Rice has previously marketed, promoted, or made available prior to Covid-19.

90.     The costs incurred for having an online only program is significantly lower than the overhead needed to provide classes and services on campus.

91.     Defendant has been unjustly enriched by Plaintiff's payment of tuition and Mandatory Fees.

92.     Despite not being able to provide such services, Rice failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees.

### THIRD CAUSE OF ACTION
### CONVERSION & TAKING OF PROPERTY
### (On Behalf of Plaintiff and the Class)

93.     Plaintiff repeats and re-alleges the factual allegations above, as if fully set forth herein.

94.     Plaintiff brings this claim individually and on behalf of the members of the Class.

95.     Plaintiff and the Class have made financial arrangements that required them to make payments before Defendant provided services.

96.     Defendant accepted Plaintiff's monies with the express understanding that the Defendant would provide in-person and on-campus educational experiences, opportunities, and services.

97.     Defendant was unable to perform such services or provide such experiences and opportunities.

98.     Defendant has converted Plaintiff's and the Class' property – namely their tuition and fees - into their own property[7] without just compensation.

99.     Defendant has converted Plaintiff's tuition and fees into its own monies without providing the in-person and on-campus services that Plaintiff and the Class gave their money for.

100.    Defendant's failure to return the tuition and fees paid by its students is a separate and distinct harm from its failure to provide the promised and agreed-upon in-person learning and on-campus services.

101.    It is inequitable for Defendant to convert such funds into its own profits despite the failure to provide such services, experiences, and opportunities.

---

[7] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.). The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996). Thus, it is beyond dispute that any college or university receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student. This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for conversion of those funds can be properly sustained. Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)     For an order certifying the Class under the FRCP and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For compensatory damages in an amount to be determined by the trier of fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and,

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

21

Dated: January 11, 2021                     Respectfully submitted,

                                                  **THE EDWARDS LAW GROUP**
                                                  THE HAEHNEL BUILDING
                                                  1101 E. 11TH STREET
AUSTIN, TX  78702
Tel.  512-623-7727
Fax.  512-623-7729

By_____/s/ Jeff Edwards_____
      JEFF EDWARDS
      State Bar No. 24014406
      jeff@edwards-law.com
      MICHAEL SINGLEY
      State Bar No. 00794642
      mike@edwards-law.com
      DAVID JAMES
      State Bar No. 24092572
      david@edwards-law.com

AND

Michael A. Tompkins, Esq.*
Jeffrey K. Brown, Esq.*
Brett R. Cohen, Esq.*
Anthony Alesandro, Esq.*
**LEEDS BROWN LAW, P.C.**
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com
bcohen@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

**AND**

**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.*
Jeremy Francis, Esq.*
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (854) 705-9460

22

\* Admission *Pro Hac Vice* to be requested

*Counsel for Plaintiff and Proposed Class*